IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VINCENT L. AMMONS,

                                                    OPINION AND ORDER

                Plaintiff,

                                                         08-cv-608-bbc

      v.

DR. JOAN M. HANNULA,
JEAN E. VOEKS
and DR. KENNETH ADLER,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Vincent Ammons, a prisoner at the Stanley Correctional Institution in Stanley, Wisconsin, has filed a civil complaint under 42 U.S.C. § 1983 against defendants Dr. Joan M. Hannula, Jean E. Voeks and Dr. Kenneth Adler for denying him adequate medical care under the Eighth Amendment. In this court's November 6, 2008 order, I construed plaintiff's complaint as including a motion for preliminary injunctive relief because he alleged that he is in imminent danger of serious physical injury. I gave plaintiff until November 26, 2008, in which to file a brief, proposed findings of fact and evidentiary materials in support of his motion for a preliminary injunction. On December 1, 2008, plaintiff submitted a formal motion for a preliminary injunction along with a brief and

1

proposed findings of fact with attached affidavit.[1]   In response, defendants have filed an

affidavit of defendant Hannula with attached medical records, as well as a brief.[2]

In this case, plaintiff is proceeding on claims that (1) defendant Hannula is refusing

to prescribe an effective medication for severe pain in his wrist; (2) defendants Hannula and

Adler are denying plaintiff further evaluation by an orthopedic hand surgeon as

recommended by a Dr. Edgar Hicks, an orthopedic specialist; and (3) defendant Voeks failed

to investigate his informal complaints regarding defendant Hannula's denial of further

treatment.  Plaintiff seeks a preliminary injunction "restraining the defendants from denying

him adequate medical treatment and care for his severe wrist injury and its concomitant

pain."  Thus I understand plaintiff to be seeking effective pain medication as well as further

---

[1] On December 29, 2008, plaintiff also filed a motion for a temporary restraining order enjoining defendants from denying him the renewal of a medical restrictions/special needs authorization allowing him to continue to be assigned to a lower bunk.  However, on January 5, 2009, plaintiff filed a letter in which he withdrew that motion.

[2] As noted by plaintiff in his January 5, 2009 letter, defendants' submissions do not conform to this court's procedures for responding to a motion for a preliminary injunction. Defendants include neither a response to the plaintiff's statement of proposed findings of fact nor their own statement of proposed findings of fact.  Rather, defendants have submitted the affidavit of defendant Hannula along with a brief that lacks pinpointed citations to that affidavit.  Although defendants' submissions are deficient, because the material in the submissions is relatively straightforward and it would waste further time to ask defendants to resubmit their materials to conform with this court's procedures, I will consider the submissions in addressing the motion for a preliminary injunction.

2

evaluation by an orthopedic hand surgeon.[3]

This court's December 12, 2008 order stated that a hearing date on the preliminary injunction motion would be set following receipt of defendants' response if the parties' preliminary injunction submissions raised issues necessitating a hearing. I conclude that a hearing is not necessary because the parties' submissions make it clear that plaintiff is not entitled to preliminary injunctive relief.

For the sole purpose of deciding this motion for a preliminary injunction, I find from the parties' submissions, including plaintiff's medical records, that the following facts are material and undisputed.

UNDISPUTED FACTS

Plaintiff Vincent Ammons is a prisoner at the Stanley Correctional Institution in Stanley, Wisconsin. Defendant Dr. Joan M. Hannula is a physician employed by the Department of Corrections at the institution. On June 10, 2008, defendant Dr. Kenneth Adler was employed by the Wisconsin Department of Corrections Bureau of Health Services

---

[3] In his brief in support of his motion for a preliminary injunction, plaintiff also discusses his claims against defendant Voeks for failure to investigate his informal complaints about defendant Hannula. However, because I conclude below that plaintiff fails to show some likelihood of success on the merits of his claims against Hannula, I need not consider his claims against Voeks.

as a physician.

Defendant Hannula first met with plaintiff on February 20, 2008.  At that time, she addressed plaintiff's concern about his wrist.  Plaintiff advised defendant that he had stopped taking all his medications "of his own volition except Ultram & Metoprolol."  On reviewing plaintiff's medical records, Hannula noted that plaintiff had had wrist cartilage repair in July 2006.  He had fallen on his wrist on March 1, 2007.  Plaintiff's x-ray following the fall did not reveal any fracture.  Plaintiff had seen an orthopedist at the University of Wisconsin Hospital and Clinics in September 2007 and the orthopedist, a Dr. James Leonard, had made a recommendation of a trial of Ultram for pain relief and an MRI, with a follow-up after the MRI was performed.  Plaintiff had been on Naproxen 500 mg twice daily as needed for pain since at least June 12, 2006.  He was started on Ultram on December 20, 2007, for three weeks, after he was evaluated by a Dr. Braunstein in the Health Services Unit.  Braunstein refilled the Ultram prescription for one year on January 16, 2008.  Plaintiff fell on his wrist again on January 31, 2008.

Defendant Hannula's physical assessment of plaintiff's wrist at the February 20 visit was that plaintiff's wrist motion was limited.  However, when plaintiff's attention was distracted from Hannula's examination, palpation did not appear as bothersome to plaintiff.  On February 21, 2008, defendant Hannula submitted a Class III request for an MRI to be done of plaintiff's wrist.  On February 22, 2008, she saw plaintiff for follow-up and also

4

submitted a Class III request for an orthopedic consultation.

On March 22, 2008, defendant Hannula discontinued plaintiff's prescription for Ultram because it was no longer listed on the pharmacy formulary for long-term use for inmate patients. This meant that Hannula was not allowed to prescribe it without special approval from the main pharmacy or medical director. In Hannula's medical judgment, Ultram was no longer appropriate for plaintiff's long-term pain control because it was never intended for long-term use. She was aware that plaintiff remained on Naproxen and believed that a different pain medication was not warranted because Naproxen was an effective medication for plaintiff's pain management needs.

On March 24, 2008, plaintiff received a memo from health services medical staff informing him that defendant Hannula had discontinued his prescription for Ultram. On March 26, 2008, defendant Hannula met with plaintiff for complaints of left wrist pain. She informed him that the MRI of his left wrist had been approved. However, plaintiff became upset about the discontinuance of the Ultram prescription. He told Hannula that Ultram had been effective as a pain reliever for his wrist, knee and back injuries. Hannula told plaintiff that he could not have Ultram because it was a non-formulary medication. Plaintiff told Hannula that he believed Dr. Braunstein was aware that Ultram was a non-formulary medication but that Braunstein had received approval for it. He then accused Hannula of discontinuing the prescription because of the cost and lying about telling him that the

5

company that makes Ultram was discontinuing it as a non-formulary medication.  Plaintiff

told Hannula that he wanted the Ultram reissued "or some other effective pain relief

medication because without it [he] would be in pain, which would further limit [his] daily

activities."  At that point, Hannula told plaintiff that he was not getting any medication,

refused to discuss her decision with him and escorted him out of her office.

On May 5, 2008, plaintiff was sent to the Black River Memorial Hospital in Black

River Falls, Wisconsin for an MRI of his wrist.  The report from the examination states in

part:

> Impression: Loss of cartilage, mild osteophyte formation and degenerative
> subchondral marrow signal intensity change most likely degenerative
> osteoarthrosis.

Upon receipt of the MRI examination report, defendant Hannula saw plaintiff on

approximately May 18, 2008.  She told plaintiff that she would arrange for him to see an

orthopedic specialist for evaluation and treatment.  Plaintiff told Hannula about his

continued pain and asked her again for pain medication, but she refused to prescribe any.

Nevertheless, plaintiff's medical records show that plaintiff's prescription for Naproxen was

refilled on May 6, 2008, as well as on June 3, July 9, July 22, August 8, September 8, and

October 24, 2008, with the last refill in an amount sufficient to last approximately 60 days.

On June 4, 2008, plaintiff was evaluated by orthopedic specialist Dr. Edgar Hicks at

the Black River Memorial Hospital.  The report drafted by Hicks states in relevant part:

[Plaintiff] has a long history with his left wrist, first with an injury in the 90's and then in July of 2006, he had difficulties and underwent surgery. He had been seen by several people and felt to have triangular firbrocartilage problems. He was treated with an arthroscopy with arthroscopic surgery of that wrist, supposedly debridement and stabilization of his triangular fibrocartilage and he states he remembers getting along well and then in March of 2007 he fell and his wrist has been bad thereafter. I did examine this wrist. He is rather diffusely tender, doesn't like to move it. States there is really no amount of medicine that controls the pain. He seems to have very slight fullness over the dorsal carpal area and it is mildly tender diffusely in that area and focally in one area. I couldn't discern a discrete mass or cyst. Neuro circ checks were intact to his hand. His thenar contours and hypothenar are normal. Intrinsics were all intact. He had good capillary refill throughout. I reviewed these notes and think he is at the point where he really needs to see a designated hand, preferably wrist, surgeon and decide if there is anything that can be done for this which would include then, any additional workup as indicated.

On June 10, 2008, defendant Hannula received a copy of Hicks's report. The suggestion for a hand surgeon referral required approval by the Class III committee, which is made up of other Department of Corrections physicians, including, but not limited to, the department's medical director. Therefore, Hannula arranged to have the suggestion presented to the committee, chaired by defendant Adler. After review of plaintiff's condition and the results of the recent MRI of his wrist, the committee declined the additional referral. The committee's report states:

[Plaintiff's] wrist pain appears secondary to osteoarthritis and is not limiting his functioning. Trials of pain medications, and topical capsaicin recommended instead of hand surgery evaluation.

On June 18, 2008, Hannula met with plaintiff to discuss Hicks's recommendation.

7

Hannula informed plaintiff that the committee had denied the recommendation because it was the committee's impression that his pain was most likely caused by osteoarthritic changes. Plaintiff told Hannula about "the symptoms of [his] wrist injury, the pain, and the need for treatment." Hannula responded by stating that she was "discontinuing all pursuit of seeking medical care for [plaintiff's] wrist injury as it was not warranted." Plaintiff then accused Hannula of not being concerned about his health but only about saving money for the medical department. He said, "Madison is only concerned with saving money and if you're done, I'm done." I don't have time for this." (The parties dispute whether defendant Hannula attempted to discuss other pain control options with plaintiff before their meeting ended. Hannula says she tried to raise the issue and plaintiff says the subject never came up.)

On August 11, 2008, plaintiff was scheduled to see defendant Hannula for follow-up but he did not show up for the appointment. She had him rescheduled for September 24, 2008, but he did not show up for that appointment.

As of December 16, 2008, plaintiff was still prescribed Naproxen as needed for pain relief. Naproxen is a non-controlled medication that inmates can use at their own volition. As a medical doctor, defendant Hannula believes the current course of treatment is medically appropriate for plaintiff's condition, taking into consideration the course of treatment he has

8

been provided for the problems with his wrist, including tests conducted and experts consulted.

OPINION

The standard applied to determine whether a plaintiff is entitled to preliminary injunctive relief is well established:

> A district court must consider four factors in deciding whether a preliminary injunction should be granted. These factors are: 1) whether the plaintiff has a reasonable likelihood of success on the merits; 2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; 3) whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant; and 4) whether the granting of a preliminary injunction will disserve the public interest.

Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989). At the threshold, plaintiff must show some likelihood of success on the merits and that irreparable harm will result if the requested relief is denied. If plaintiff makes both showings, the court then moves on to balance the relative harms and public interest, considering all four factors under a "sliding scale" approach. See In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997). Thus, to obtain a preliminary injunction, a movant must first prove that his claim has "at least some merit." Digrugilliers v. Consolidated City of Indianapolis, 506 F.3d 612, 618 (7th Cir. 2007) (citing Cavel International, Inc. v. Madigan, 500 F.3d 544, 547 (7th Cir. 2007)).

9

After considering the parties' submissions regarding plaintiff's motion for a preliminary injunction, I will deny the motion because plaintiff has failed to show some likelihood of success on the merits of his § 1983 claim.  Plaintiff contends that the defendants each denied or are denying him adequate medical care under the Eighth Amendment, which prohibits cruel and unusual punishment.  Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Plaintiff alleges that defendants were deliberately indifferent to his serious medical need to (1) receive an effective painkiller for the pain accompanying his wrist injury; and (2) be evaluated by an orthopedic hand surgeon as recommended by Hicks.  However, the undisputed facts show that although plaintiff did not receive the specific treatment he desired from defendants, they did provide him with other treatment options.

Regarding the refusal to provide plaintiff with an effective painkiller, plaintiff argues that defendant Hannula refused to provide any alternate painkiller after she discontinued his Ultram prescription, but this is belied by plaintiff's medical records, which show that he has ongoing access to Naproxen, a painkiller that defendant Hannula believes is appropriate for him.  Moreover, Hannula's reason for discontinuing plaintiff's Ultram prescription was grounded on her belief that it was not appropriate for plaintiff's long-term pain control. Therefore plaintiff has failed to show some likelihood of success on this claim because

10

prisoners are not entitled to receive the particular medical treatment of their choice.  Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997); see also Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).  Moreover, a medical professional's disagreement with a patient about treatment is not deliberate indifference unless "no minimally competent professional would have so responded under those circumstances." Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008).  Plaintiff has adduced no evidence to show that defendant Hannula acted below the minimal standards of competence by discontinuing the Ultram prescription and relying on Naproxen.

Regarding the refusal to have plaintiff evaluated by an orthopedic hand surgeon, plaintiff argues that defendants were deliberately indifferent to his serious medical needs because they failed to follow the recommendation of Hicks, an orthopedic specialist. Although plaintiff correctly points out that a defendant's decision to ignore a specialist's orders can imply deliberate indifference, see Gil v. Reed, 381 F.3d 649, 662-64 (7th Cir. 2004), he has presented no evidence to raise such an implication here.  In Gil, the court concluded that deliberate indifference could be inferred where a prison doctor canceled a specialist's prescriptions and substituted medication that the specialist had specifically warned was dangerous for persons with plaintiff's condition.  Id. at 664.  In another case, Jones v. Simek, 193 F.3d 485, 490 (7th Cir. 1999), the court found that deliberate indifference could be inferred where plaintiff submitted evidence that a prison doctor waited

11

six months before making a promised referral to a neurologist and then, once he did, refused without explanation to follow the neurologist's orders.  In the present case, plaintiff has submitted no evidence suggesting that defendants' decisions were based on anything other than medical judgment.  Regarding defendant Hannula, the record shows that she did not have the power to approve a consultation by an orthopedic hand surgeon, and that her only role in this process was to present Hicks's recommendation to the Class III committee, which she did.  Thus plaintiff fails to show how she could have acted with deliberate indifference.

Regarding defendant Adler, whose role in this case is limited to his position as chair of the Class III committee, the committee stated its medically-based reasoning for not approving the referral (that plaintiff's wrist pain appears to be secondary to osteoarthritis, a condition that defendant Hannula notes cannot be resolved by surgery) and it recommended trials of various pain medications as an alternate treatment.  Its actions are inconsistent with deliberate indifference.

Moreover, plaintiff has failed to put into evidence showing how Adler's committee is in a position similar to the prison doctors in Gil and Jones who, by the nature of their positions, had less expertise in the area of the prisoner's condition than the specialist ordering a certain treatment.  Plaintiff focuses his analysis on defendant Adler (who in his brief he contends without any evidence is a general practitioner) but provides no information about any members of the committee to indicate that although the committee is specifically

12

tasked with approving referrals, including those made by other specialists, its members are unsuited to reject the advice of a specialist.

Finally, in his brief plaintiff argues that defendant Adler was deliberately indifferent to his serious medical needs by "failing to keep himself apprised of the course of treatment given to plaintiff" in compliance with the committee's June 10, 2008 report, but plaintiff fails to show how the committee's alternate treatment could have been implemented, given that plaintiff failed to show up for appointments in August and September of 2008, and he filed no health service requests regarding this treatment.[4]  Therefore, because plaintiff fails to submit evidence from which the court could infer that defendants acted with deliberate indifference, he has failed to prove that his claim has at least some merit.  Therefore, his motion for a preliminary injunction must be denied.

---

[4] In his January 5, 2008 letter to this court, plaintiff asserts without evidentiary support that he has filed health services requests and offender complaints regarding his wrist injury since June 18, 2008.  However, I must decide plaintiff's motion for a preliminary injunction on facts in proper evidentiary form.  I cannot consider this unsworn statement made well after the deadline for his submissions to this court in support of his motion.

ORDER

IT IS ORDERED that:

    1.  Plaintiff Vincent Ammons's motion for a preliminary injunction, dkt. #11, is

DENIED.

    2. Plaintiff's motion for a temporary restraining order, dkt. #30, is WITHDRAWN.

    Entered this 6th day of January, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14